UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**PATRICK L. STELLINGWERF** and
**VICKI R. STELLINGWERF**,

Debtors.

Case No. **05-61594-13**

## *MEMORANDUM   OF   DECISION*

At Butte in said District this 10th day of June, 2009.

In this Chapter 13 bankruptcy, after due notice, a hearing was held April 24, 2009, in Great Falls on: (1) the Chapter 13 Trustee's Motion for Order Authorizing Settlement filed January 14, 2009, at docket entry no. 85; (2) the Chapter 13 Trustee's Final Application for Professional Fees and Costs filed January 26, 2009, at docket entry no. 93; and (3) the Chapter 13 Trustee's Amended Motion to Modify Confirmed Chapter 13 Plan filed March 17, 2009, at docket entry no. 115.  The Chapter 13 Trustee, Robert G. Drummond of Great Falls, Montana, appeared at the hearing in support of his Motions and Application.  Debtors Patrick and Vicki Stellingwerf appeared at the hearing *pro se*.  Attorney Fredric A. Bremseth ("Bremseth"), debtor Patrick Stellingwerf ("Patrick"), debtor Vicki Stellingwerf ("Vicki") and the Chapter 13 Trustee testified.  The Trustee's Exhibits 1, 2, 3 and 4 were admitted into evidence without objection.

### FACTS

Vicki was employed by the Burlington Northern and Santa Fe Railway Company

("BNSF"). The BNSF is a railroad operating in interstate commerce and is thus subject to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, which governs all claims for on-the-job personal injuries sustained by railroad employees. Vicki claims she injured her back on May 28, 2004, while attempting to repair a broken coupler and after making three attempts to lift an 80 to 90 pound knuckle. Vicki did not immediately report her May 28, 2004, injury but claims she further injured her back on June 16, 2004, while opening a switch. Vicki has not worked since June 26, 2004. Vicki was later diagnosed by a doctor with a permanent, disabling back injury. The doctor concluded that Vicki could never safely return to her previous work at BNSF Railway Company.

Patrick began working as a train crewman for BNSF's predecessor, Burlington Northern, in 1974. Patrick claims that over the course of his railroad career, he was continually required to perform his duties in a manner and with equipment that individually and cumulatively caused injury to Patrick's back. After attempting to complete various assigned tasks on March 26, 2005, Patrick's back began to hurt. Patrick thus filed a written personal injury report with BNSF. Debtors maintain in their objection to the Trustee's settlement that both Patrick and Vicki have "herniated discs from defective switches and hand brakes."

Debtors filed for protection under Chapter 13 of the Bankruptcy Code on May 19, 2005.[1]

---

[1] Patrick and his former spouse, Deborah, filed a Chapter 7 bankruptcy case on August 8, 1986, and received a discharge of their debts on January 28, 1987. *See* Case No. 86-20476-7. Patrick and Vicki filed a Chapter 13 bankruptcy case on July 26, 1999, but that bankruptcy case was dismissed upon Debtors' request on January 26, 2000. *See* Case No. 99-41970. Debtors filed yet another Chapter 13 bankruptcy petition on April 26, 2000. *See* Case No. 00-41083-13. Debtors' received a discharge in Case No. 00-41083-13 on October 8, 2004, and the case was closed on January 4, 2005. Debtors filed another Chapter 13 bankruptcy petition on June 6, 2004, but that case was dismissed upon request of the United States Trustee on July 2, 2004, because Debtors had two Chapter 13 bankruptcies open at the same time. *See* Case No. 04-

Debtors, while listing potential claims against Tamara Barkus, Esq., Credit Bureau of Havre, Culligan and the State of Montana Department of Revenue, did not disclose any potential FELA claims against BNSF in their Schedule B filed June 3, 2005. Debtors similarly did not disclose their FELA claims on their Statement of Financial Affairs filed June 3, 2005. Per Schedule I filed June 3, 2005, Debtors reported that they were both employed with "Burlington Northern" and their combined monthly income after taxes, insurance and union dues was $6,146.44. Debtors' monthly disposable income was listed as $2,160.00 on Schedule J. Debtors' Fourth Amended Chapter 13 Plan--filed August 2, 2005, and confirmed August 11, 2005--provided for plan payments totaling $42,663.03.

Debtors fell behind with their plan payments, prompting the Trustee to file a motion to convert Debtors' case to Chapter 7 on March 29, 2006. In response to the Trustee's motion, Debtors filed amended Schedules I and J on May 5, 2006, showing that Patrick was "on disability" while Vicki was "unemployed." Debtors' amended Schedule I shows that Patrick was receiving $2,500.00 per month in "pension or retirement income." Debtors listed zero income for Vicki. Per Debtors' amended Schedule J, Debtors' monthly disposable income decreased from $2,160.00 per month to a negative 10.89. In conjunction with their amended Schedules I and J, Debtors also filed an amended Chapter 13 plan that reduced their total plan payments from $42,663.03 to $38,867.30. With the Trustee's consent, said amended plan was approved on May 9, 2006.

Vicki and Patrick both, through attorney David R. Paoli of Paoli, Latino, Kutzman & Jasper, P.C. ("Paoli"), filed Complaints against BNSF in March of 2006. Debtors did not

---

61747.

disclose their claims against BNSF to the Chapter 13 Trustee. Instead, the Chapter 13 Trustee learned of Debtors' lawsuits from David R. Paoli in September of 2007, after David R. Paoli learned of this bankruptcy proceeding in summary judgment motions filed by BNSF in Debtors' FELA actions. Upon learning of Debtors' pending FELA claims against BNSF from Paoli, the Trustee immediately filed an application to approve the employment of Paoli. The Trustee also filed a motion to modify Debtors' confirmed Chapter 13 plan on September 28, 2007, seeking to amend Debtors' confirmed plan in order to administer the FELA claims and pursue the claims on behalf of the creditors. The Trustee's proposed plan specifically provides in paragraph 6(a): "Debtors will turnover to the Trustee any and all FELA claims to be pursued on behalf of the Bankruptcy Estate." With the Debtors' consent, the Trustee's proposed modified plan was approved on October 16, 2007. Debtors have not, to this date, amended their Schedules to list their FELA claims as assets or to claim an exemption in the FELA claims.

Consistent with the Trustee's approved modified Chapter 13 plan, either the Debtors or the Chapter 13 Trustee, in October of 2007, moved to substitute the Chapter 13 Trustee as the real party in interest in Debtors' pending FELA state district court actions: *Patrick Stellingwerf v. BNSF Railway Company, a Delaware Corporation*, pending in the Eighth Judicial District Court of Cascade County, Cause No. ADV 06-433(b), and *Vicki R. Stellingwerf v. BNSF Railway Company, a Delaware Corporation*, pending in the Thirteenth Judicial District Court for Yellowstone County, Case No. DV 06-0331.[2] With Patrick's and Vicki's consent, the Trustee was substituted as the real party in interest in both actions. The Judge in Cause No. ADV06-

---

[2] An Order entered by the Honorable Gregory R. Todd in Cause No. DV 06-0331 actually states that Vicki "moved to substitute the Bankruptcy Trustee as the real party in interest and opposed the motion for summary judgment."

4

433(b) does not provide any reasoning as to why the Chapter 13 Trustee was permitted to be substituted as the real party in interest.  However, the court in Cause No. DV 06-0331, after noting the distinction between Chapter 7 and Chapter 13 of the Bankruptcy Code, recognized that the Trustee's approved Modified Chapter 13 Plan dated September 28, 2007, specifically includes the "FELA lawsuit [a]s an estate asset as opposed to the personal asset of the debtor Stellingwerf."

After being substituted as the real party in interest, the Trustee successfully defeated the motions for summary judgment filed by BNSF wherein BNSF argued that Debtors were judicially estopped from asserting their FELA claims against BNSF because the Debtors failed to disclose such claims in this pending Chapter 13 bankruptcy.  In support of its motions, BNSF asserted in various pleadings that Vicki stated during her November of 2006 deposition that Debtors had no other "claims, lawsuits, anything pending in any other court anywhere."  Patrick similarly stated during his deposition in March of 2007 that he did not have any bankruptcy claims, has not had problems with creditors, and has not had to make arrangements to reorganize his finances to deal with creditors.  In addition to not disclosing this bankruptcy proceeding in the FELA actions, Vicki also failed to disclose to BNSF that she had a prior undisclosed injury from a car wreck.

Following denial of BNSF's motions for summary judgment, prosecution of Debtors' FELA claims by the Trustee went along until the Trustee filed his Motion for Order Authorizing Settlement on January 14, 2009, seeking to settle, for an amount disclosed under seal, Debtors' FELA state district court actions.  Debtors, through attorney Fredric A. Bremseth ("Bremseth") of Minnetonka, Minnesota, filed an Objection to the Trustee's proposed settlement with BNSF on

5

February 4, 2009, arguing that based upon "information and belief, the proposed settlement for the Stellingwerfs' two Federal Employment Liability Act claims appears inadequate on its face." Bremseth is an attorney who is licensed to practice in both Minnesota and Montana. Bremseth has specialized in the FELA area for over 30 years. In the objection to the Trustee's proposed settlement, Bremseth argues:

> Debtors are each disabled from returning to their former employment, and in the FELA case of Vicki Stellingwerf, a professional economist has given the expert opinion that her future loss of earning capacity is in the sum of $756,834. Debtors' former FELA attorneys estimated Patrick Stellingwerf's wage loss as approximately $800,000. . . . Debtors and their former attorney had a falling out and debtors discharged the Paoli law firm and hired Bremseth Law Firm to represent them on their FELA claim. One of the reasons for the discharge is that debtors' former attorneys told them that they must accept a settlement that the attorneys negotiated with the Trustee and with BNSF, and that the Paoli law firm could no longer represent them in their personal injury claims.
>
> While debtors' current attorney estimated the potential range of values of their claims to be between $400,000 and $2 million, the Trustee, the Paoli law firm, and BNSF are trying to settle the cases for $160,000. At the same time the Trustee is seeking approval to pay $40,000 to the Paoli law firm in attorneys' fees and costs in the amount of $19,269.10. It turns out that the proposed distribution also includes giving BNSF a credit of $60,269.10 for disability advances BNSF made to debtors prior to the law suit. Thus, the net settlement is only $99,730.70 and out of this sum, the Trustee and debtors' former attorneys propose to get paid almost $69,000. This leaves approximately $30,000 for the Chapter 13 creditors.

The foregoing response filed by Bremseth, combined with other events that transpired in this case, prompted the Court to enter an Order to Show Cause on March 30, 2009, directing Bremseth to file a written report on or before April 13, 2009, "clearly informing this Court as to who he is representing, the scope of his representation, and whether he is representing the Debtors in this Chapter 13 bankruptcy case." The Court's March 30, 2009, Order to Show Cause explains:

6

>Bremseth filed a notice of appearance (Docket No. 98) on February 4, 2009, stating: "This appearance is specifically with respect to [Debtors'] respective FELA claims." Bremseth has not filed an application for approval of his employment as required by Montana Local Bankruptcy Rule ("LBR") 2014-1 and Local Bankruptcy Form 1. Therefore Bremseth's employment by the Debtors and/or the estate has not been requested or approved by this Court for purposes of Debtors' FELA claims, for which professionals already have been employed after application to the Court in compliance with the Court's Local Rule.
>
>Bremseth filed motions to continue hearings in this Chapter 13 case (Docket Nos. 106 and 119), and so his representation of the Debtors has not been limited to the FELA claims. An employee of Bremseth identified as "Becca" told the case administrator in a telephone call on March 27, 2009, that Bremseth could not attend the hearing and Debtors would represent themselves, and that Bremseth was not really their attorney. Bremseth's status in this case is vague, and this set of circumstances is unacceptable when Bremseth is filing motions in the main case, then failing to appear at hearings and his employees are stating that he is not really Debtors' attorney. If Bremseth and Debtors intend that he represent them in a FELA case, they must comply with Mont. LBR 2014-1. If Bremseth is not going to represent the Debtors in this Chapter 13 case, he cannot pick and choose when to file motions for them in the case but then fail to appear at hearings.

Bremseth filed a response to the aforementioned Order to Show Cause on April 8, 2009,

explaining that:

>he is not representing Patrick Stellingwerf or Vicki Stellingwerf in the Chapter 13 bankruptcy case nor is he at present representing either debtor in their respective FELA cases. Bremseth is appearing only as a witness in support of debtors' objection to settlement and has filed an affidavit outlining his opinions. Bremseth also filed a brief in opposition to the trustee's motion arguing that the trustee does not have the authority to settle these cases. Bremseth apologizes for any confusion this may have caused. Debtors Patrick Stellingwerf and Vicki Stellingwerf will adopt this brief as their own pro se brief objecting to settlement.

In support of their objection to the Trustee's proposed settlement, Debtors, through

Bremseth, argue that the Trustee does not have the authority to settlement Debtors' FELA claims

because the Debtors alone have standing to prosecute their FELA lawsuits. In support of their

argument, Debtors cite to various cases, including Judge Todd's decision in *Vicki R. Stellingwerf*

7

*v. BNSF Railway Company, a Delaware Corporation* along with *Middleton v. Caterpillar Indus., Inc.*, 979 So.2d 53, 60-61 (Ala.2007), and *Haslett v. Planck*, 140 Wash.App. 660, 664, 166 P.3d 866 (2007). Debtors also oppose the Trustee's proposed settlement arguing that such settlement grossly undervalues Debtors' FELA claims and finally, Debtors assert that "it appears that some if not all of the FELA settlement proceeds will be an exempt asset, not subject to the bankruptcy at all."

In response, the Trustee testified that like Bremseth, he originally thought that Debtors' FELA cases were worth substantially more than the proposed settlement. However, after being involved with the prosecution of Debtors' FELA cases, the Trustee has changed his mind due to certain difficulties that have arisen. For example, the Chapter 13 Trustee defeated BNSF's judicial estoppel claims but the Debtors may not have such success. In addition, the Chapter 13 Trustee believes that a rigorous defense by BNSF may result in a defense verdict given the Debtors' credibility. In particular, Debtors failed to disclose their FELA claims in this bankruptcy case and, to date, have made no effort to amend their Schedules to list such claims. Moreover, Debtors failed to disclose this bankruptcy proceeding to BNSF, even upon direct questioning about any such proceeding under oath. Given the inherent risks associated with Debtors case, caused primarily by the Debtors' own actions, the Trustee concludes that the scales tip in favor of the settlement. Finally, Vicki failed to disclose in the BNSF litigation injuries she sustained in a car wreck. The Trustee contends that Debtors' failure to be forthcoming with all parties severely damages the Debtors' credibility and in turn, damages Debtors' claims against BNSF.

DISCUSSION

Pursuant to 11 U.S.C. § 541(a), a bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case," and this includes a cause of action which exists on the petition date. *In re Jones*, 15 Mont. B.R. 14, 15 (Bankr. D. Mont. 1995); *In re Binns*, 9 Mont. B.R. 386, 387 (Bankr. D. Mont. 1991). In *In re Brown*, 363 B.R. 591 (Bankr. D.Mont. 2007), this Court explained that:

> assets of the estate properly include any of the debtors' causes of actions. *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir.2001); *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 n. 9 (1983) (Citing to comments made in the House and Senate Reports on the Bankruptcy Code, "[t]he scope of this paragraph [§ 541(a)(1) ] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act. H.R.Rep. No. 95-595, p. 367 (1977); S.Rep. No. 95-989, p. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5868, 6323."); *In re Moore*, 110 B.R. 924, 925-926 (Bankr.C.D.Cal.1990) (lender liability action by debtor against bank is estate property); *Gandy v. Peoples Bank and Trust Co.*, 224 B.R. 340, 345 (S.D.Miss.1998)(debtor's lawsuit, instituted after discharge, based on allegedly unlawful insurance premiums and interest in connection with a pre-bankruptcy loan, was estate property).

This Court in *Brown* went on to explain:

> [If] the cause of action accrued prior to a debtor's petition date, it is an asset that must be scheduled. *Cusano*, 264 F.3d at 947. Unscheduled claims pass to the trustee and are not abandoned, *Welsh v. Quabbin Timber, Inc.*, 199 B.R. 224, 229 (D.Mass.1996), even though the estate is closed or the plan is confirmed. *Dixon v. First Family Financial Services*, 276 B.R. 173, 181 (S.D.Miss.2002), abrogated on other grounds, *Reed v. Mississippi Farm Bureau Mut. Ins. Co.*, 299 B.R. 804 (S.D.Miss.2003)( "It is axiomatic that, without disclosure of property, it can be neither abandoned nor administered.")[.]

\* \* \*

> Moreover, the accrued cause of action is property of the estate even if the debtors were unaware of the claim when they filed for bankruptcy protection. *See Miller v. Pacific Shore Funding*, 287 B.R. 47, 50 (D.Md.2002) ("Even a cause of action

9

>that the debtor, when filing the petition, did not know the law granted belongs to the estate.... Property of the debtor does not escape the bankruptcy estate merely because the debtor is unaware of its existence.") A later recovery on the claim is derivative of the cause of action and therefore also property of the estate. *In re Smith*, 293 B.R. 786, 788 (Bankr.D.Kan.2003); *In re Ballard*, 238 B.R. 610, 624 (Bankr.M.D.La.1999).

Debtors' claims against BNSF that accrued prior to Debtors' petition date are clearly assets of this bankruptcy estate.

After establishing property of the estate, it remains as such and may be administered by the Trustee for the benefit of the creditors unless the debtor is entitled to remove, and in fact affirmatively does remove, either a portion of the asset, or the entire asset, from the bankruptcy estate through the exemption process. *In re Binns*, 9 Mont. B.R. 386, 387 (Bankr. D. Mont. 1991).

As part of the exemption process, 11 U.S.C. § 522(l) explicitly provides that "[t]he debtor shall file a list of property that the debtor claims as exempt" under subsection (b) of § 522. Federal Rule of Bankruptcy Procedure 1009(a) allows a voluntary debtor to amend the official schedules, including schedule C, as "a matter of course at any time before the case is closed." Amendments under Rule 1009(a) are liberally allowed and no court approval is required. *Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir.1998). However, case law recognizes that a bankruptcy court may deny a debtor the right to amend their schedules where the debtor has acted in bad faith or where the delay in claiming the exemption has prejudiced creditors. *Ladd v. Ries (In re Ladd)*, 450 F.3d 751, 755 (8th Cir.2006) (citing *Kaelin v. Bassett (In re Kaelin)*, 308 F.3d 885, 889 (8th Cir.2002)); *In re Michael*, 163 F.3d at 529; *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 783-84 (9th Cir. BAP 2000). The question of whether a debtor has

acted in bad faith is determined by examining the totality of the circumstances, and generally involves consideration of whether the debtor has attempted to conceal assets. *Arnold*, 252 B.R. at 785-86.

The Debtors in this case have yet to amend their schedules to list their FELA claims as assets of the bankruptcy estate. Under the circumstances in this case, where the Debtors failed to disclose the existence of their FELA claims and then, once the Trustee learned of the claims, failed to amend their schedules to include the FELA claims as an asset of the bankruptcy estate, would, at this late stage in the case, preclude the Debtors from claiming an exemption in the FELA claims. Thus, the Court is not persuaded by the Debtors' argument that the Trustee's proposed settlement with BNSF should be denied because the FELA claims are exempt assets, particularly where the Debtors have not claimed an exemption in the FELA claims.

Similarly, the Court is not persuaded by Debtors' argument that the Trustee lacks authority to settle the FELA claims. Section 1327(b) of the Bankruptcy Code specifically provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all property of the estate in the debtor." In this case, the confirmed Chapter 13 plan filed by the Trustee specifically provides that "Debtors will turnover to the Trustee any and all FELA claims to be pursued on behalf of the Bankruptcy Estate." Such language does not vest the FELA claims in the Debtors, but instead retains such claims as property of the bankruptcy estate.

Indeed, as persuasively argued by the Trustee, retention of the assets in the bankruptcy estate may be necessary to defeat a future judicial estoppel claim by BNSF. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position,

and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). "The purpose of judicial estoppel is not to protect the litigants; it is to protect the integrity of the judicial system." *In re Coastal Plains*, 179 F.3d 197, 210 (5th Cir. 1999); *see also Hamilton*, 207 F.3d at 782 (doctrine used to "protect against a litigant playing fast and loose with the rules.")

      The United States Supreme Court has espoused three factors which courts may consider in determining whether to apply the doctrine of judicial estoppel: (1) whether the party's later position was clearly inconsistent with its earlier position; (2) whether the court accepted the party's previous inconsistent position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage if the opposing party in not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Supreme Court, in enumerating these three factors, has stressed that they are not "inflexible prerequisites" or "an exhaustive formula," as "additional considerations may inform the doctrines application in specific factual contexts. *Id.*

      The Ninth Circuit has restricted the application of the judicial estoppel doctrine to cases where the court accepted the party's previous inconsistent position. *Hamilton* at 783. "In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Id.*

      The decision by the Eighth Judicial District Court in *Patrick Stellingwerf v. BNSF Railway Company, a Delaware Corporation* is too skeletal to ascertain the reason why the motion for summary judgment was denied. However, the decision in *Vicki R. Stellingwerf v.*

12

*BNSF Railway Company, a Delaware Corporation* is more comprehensive and expressly relies on *Middleton v. Caterpillar Indus., Inc.*, 979 So.2d 53, 60-61 (Ala.2007), and *Haslett v. Planck*, 140 Wash.App. 660, 664, 166 P.3d 866 (2007). Both *Middleton* and *Haslett* adopt the three factors of judicial estoppel espoused in *Hamilton, supra*. Considering the three *Hamilton* factors, the court in *Vicki R. Stellingwerf v. BNSF Railway Company, a Delaware Corporation* concluded that "there is a significant argument about whether the Bankruptcy Court accepted the debtor's prior position and whether Stellingwerf derived an unfair advantage or imposed an unfair detriment on BNSF[,]" and thus denied BNSF's motion for summary judgment. While the motions for summary judgment were denied after the Trustee was substituted as the real party in interest, it is not clear whether the Debtors could survive a future claim of judicial estoppel.

Finally, the Court disagrees with the Debtors's argument that the Trustee's proposed settlement is "grossly" inadequate and "vastly" undervalued. The Trustee presented sufficient uncontested testimony to show that these Debtors will, if the FELA claims are tried, suffer substantial credibility hurdles that could result in a defense verdict in favor of BNSF.

Consequently, after reviewing the terms of the Trustee's proposed settlement and after consideration of the factors set forth in *Martinson v. Michael (In re Michael)*, 14 Mont. B.R. 363, 365 (Bankr. D.Mont. 1995) (construing *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986)), this Court finds that the Trustee's proposed settlement is fair and equitable in satisfaction of F.R.B.P. 9019(a). *See also In re Schrock,* 9 Mont. B.R. 414, 416-17 (Bankr. D.Mont. 1991).

Because the Court deems it appropriate to authorize the Trustee to enter into a settlement with BNSF, the next matter for the Court to consider is the Chapter 13 Trustee's Final

Application for Professional Fees and Costs filed January 26, 2009, wherein the Trustee seeks approval of an award of fees in the amount of $40,000.00 and reimbursement of costs in the amount of $19,233.64 on behalf of David R. Paoli of Paoli, Latino, Kutzman & Jasper, P.C. The appointment of David R. Paoli of Paoli, Latino, Kutzman & Jasper, P.C. on a contingency fee basis, was approved by the Court on October 10, 2007. The fees requested in the instant Application are consistent with the terms of employment set forth in the Trustee's September 25, 2007, application to employ Paoli and attachments thereto. Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED:

1. The Trustee's Motion for Order Authorizing Settlement filed January 14, 2009, at docket entry no. 85, is GRANTED; and the Trustee is authorized to settle the following state court actions: *Patrick Stellingwerf v. BNSF Railway Company, a Delaware Corporation*, pending in the Eighth Judicial District Court of Cascade County, Cause No. ADV 06-433(b), and *Vicki R. Stellingwerf v. BNSF Railway Company, a Delaware Corporation*, pending in the Thirteenth Judicial District Court for Yellowstone County, Case No. DV 06-0331.

2. The Trustee's Final Application for Professional Fees and Costs filed January 26, 2009, at docket entry no. 93 is APPROVED; and consistent with the Order approving Paoli's employment, David R. Paoli of Paoli, Latino, Kutzman & Jasper, P.C. is awarded reasonable professional fees of $40,000.00 and reasonable costs of $19,233.64, which amount shall be treated as an administrative expense of this Chapter 13 bankruptcy.

14

3. The Trustee's Amended Motion to Modify Plan filed March 17, 2009, at docket entry no. 115 is GRANTED; the Modified Chapter 13 Plan dated March 17, 2009, is hereby approved; pursuant to 11 U.S.C. § 1325(c) any entity from whom the Debtors receive income shall withhold the monthly payments required under the modified Plan and pay such payments to the Standing Chapter 13 Trustee; and in the event of any default under the approved modified Plan, the Court may dismiss or convert this case to Chapter 7 without further notice or hearing in accordance with Mont. LBR 1017-1(b).

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana